UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE MILLGARD CORP.                          :

                  Plaintiff,         :         **OPINION**

    -against-                              :         99 Civ. 2952 (LBS)

E.E. CRUZ/NAB/FRONTIER-KEMPER, a            :
Joint Venture, E.E. CRUZ & CO., INC., NAB
CONSTRUCTION CORPORATION,                   :
FRONTIER KEMPER CONSTRUCTION, INC.
and AETNA CASUALTY AND SURETY               :
COMPANY,

                  Defendants.        :

    -and-                                  :

LIBERTY MUTUAL INSURANCE CO.                :

               Counterclaim Defendant.   :
------------------------------------------------------------x
SAND, J.

       Following the issuance of our August 21, 2007 opinion (Millgard VII) and pursuant to the Court's instructions both parties have submitted motions for reconsideration and proposed judgments. For the reasons stated below, after reconsideration, the Court adheres to the holdings set forth in Millgard VII[1] for the reasons set forth herein:

Millgard Motion

---

[1] Footnote 1 to that opinion contains citations to all of the Court's prior opinions in this litigation. We amend Millgard VII to correct the following typographical errors: 1) "Bauer" (the replacement contractor) is incorrectly referred to as "Buric" (on pages 10, next to last line and page 11, line 3; 2) the number "65% appearing on p. 8, line 3 should be "62.57%"; 3) The phrase "five years" appearing in the third and fourth lines of the last paragraph on page 12 should read "two years".

Millgard requests reconsideration of this Court's refusal to add either $259,791.94 for "Equipment Purchases and Modifications" or $168,990 for the fair rental value of said equipment.

This item relates to Millgard's seeking to charge as a direct cost the purchase price of equipment the useful life which extended beyond the anticipated life of the Flushing Project.

Millgard argues (Motion p. 5) that the equipment was never used again because Millgard never had another soil mix job. Hindsight however does not alter the nature of the equipment or its anticipated future use at the time of its purchase.

Although we stated in Millgard VII that the fair rental value of such equipment may be charged as an expense (Opinion p. 6) the Joint Venture ("JV") persuasively argues that "the claim for fair rental value of the equipment was not included in any of Millgard's prior damage submissions", and that it believes that the amount sought by Millgard is inherently unreasonable, being 65% of the alleged purchase costs. (JV Aligned Defendant's Notice of Motion, p. 27) and that it has had no opportunity to challenge these figures.

The Court agrees with the JV that it is simply too late to reopen these proceedings for this new single item. Millgard's motion is denied.

## Joint Venture's Motion

Much of the JV's motion is a reargument of issues on which the Court has already ruled. The JV has adequately preserved its rights to assert its claims and we do not believe an extended discussion of issues already ruled on by this Court is necessary or appropriate.

I.      Issue of Date of Termination

JV argues that the date of hypothetical termination for convenience due to impossibility is the date of Millgard's actual termination and that lost profits are zero.

In Millgard VII we explicitly stated at p. 9 that "[a]lthough one can quarrel about the appropriate cut off date, Millgard's selection of the date Joint Venture entered into a contract with another company [Bauer] to construct an alternative ESS seems reasonable."

In opposition to JV's motion Millgard cites testimony of Dennis Millgard that he was engaged with activities related to the project until the end of March and the fact that the JV never asserted impossibility as a reason for Millgard's termination (TMC Memorandum of Law in Opposition to the JV Motions to Amend, pp 6-7).

The March 18, 1998 cut off date has the virtue of objectivity (being the date the JV committed to another contractor) and there is no reason for the Court to revisit the date of termination issue.

II.     Issue whether Millgard explicitly assumed the risk for the 0.5 inch defection requirement under the subcontract.

Although the JV uses the term "assumption of risk" it is in fact invoking the concept of impossibility. But the Court has already dealt with the issue of impossibility finding that it was foreseeable and that the parties did not allocate that risk in their subcontract.

We decline to revisit this issue.

III.    Issue whether The Court should revise the 62.57% profit rate for calculating Millgard's anticipated profit.

Apart from the issue relating to the admissibility of "Ex. 94" which was the one

page handwritten note of Dennis Millgard used by him in formulating his bid, the JV argues that changed conditions during 1997 "increased costs and rendered Millgard's profits more speculative."

The issue of admissibility of Ex. 94 as past recollection recorded was fully explored at the trial. We have already determined that the subcontract was made as of August 21, 1997 and had been bid on by Millgard on January 9, 1997.

The circumstances cited by the JV as likely to increase costs and diminish profits occurred after these dates.

JV's assertion that Millgard's profit rate contains computational errors is effectively refuted by Millgard. TMC Memorandum of Law pp. 13-17.

We reject JV's contention that one should reject the evidence advanced at the trial in favor of the figures contained in Millgard's financial statements or previous contracts. The JV had full opportunity to challenge Millgard's profit estimates at the trial, including the testimony of its expert. The JV relies instead, not on the trial testimony, including the testimony of its own cost witness, but on post trial argument.

The Flatbush Bay project was a unique undertaking. Reliance on cost and profit experience in other construction projects would require a comparison of those projects with this one. The JV made no attempt to do this.

IV.  <u>The JV argues that The Court should alternatively allow the Joint Venture to change its termination rationale because Millgard has now failed to prove that it changed its position</u>.

As a part of the liability proceedings, in this bifurcated liability/damage trial this

Court denied the JV's belated attempt to convert its termination for cause to a termination for convenience. The Court reasoned that the JV could not do this if Millgard's position had changed because its request that it be terminated for convenience, not cause, was rejected by the JV

The JV now argues that since the Court has concluded that Millgard has not sustained its burden of proving damages caused by its termination for cause, we should, at this stage of the case, allow it to change the basic premise of its termination of Millgard.

We decline to do so.

The Court's conclusion that Millgard has not succeeded in proving damages resulting from its termination for cause does not establish that its position was not changed as a result of the manner in which it was terminated. See TMC Memorandum, pp 20-23 where Millgard summarizes the testimony at the liability trial as to the consequences it faced because it was terminated for cause.

Our holding that Millgard has not sustained its burden of proof with respect to damages related to bonding and the Detroit River project is not the equivalent of a finding that there were no adverse changes of position attributable to being terminated for cause in a major construction project.

V. Issue of Lost Profits on Unperformed work prior to the date of Breach.

It is not clear to the Court what the JV is driving at in this section of its motion. The Court has sufficiently stated that Millgard is entitled to recover anticipated profits on unperformed work from the time of the contract until the date when it would have been terminated for convenience due to the .05 deflection requirement. Millgard's proposed order

5

deducts lost profits on work performed from anticipated profits on unperformed work. The JV's concern that there is double-billing is unfounded.

VI.     Issue of Subcontract Divisibility.

The JV restates its contention that the contract with respect to mobilization was indivisible from the rest of the contract. We need not repeat the reasons fully stated heretofore by the Court that the parties understood and provided that the mobilization price was $1,000,000 and that mobilization was complete.

## Conclusion

All amendments sought by either party are denied. Arguments made but not dealt with above are not overlooked; they are rejected.

The Court will enter today an Order and Judgment consistent with Millgard VII.

Dated:   New York, New York
         December 6, 2007

_____
U.S.D.J.